```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Stacey L. Towe,              :

      Plaintiff,             :

   v.                        :     Case No. 2:13-cv-0577

Commissioner of Social       :     JUDGE GREGORY L. FROST
   Security,                       Magistrate Judge Kemp
                             :
      Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Stacey L. Towe, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income. That application was filed on April 1, 2010, and alleged that Plaintiff became disabled on March 27, 2010.

After initial administrative denials of her application, Plaintiff was given a hearing before an Administrative Law Judge on January 31, 2012. In a decision dated February 13, 2012, the ALJ denied benefits. That became the Commissioner's final decision on May 17, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 26, 2013. Plaintiff filed her statement of specific errors on October 22, 2013. The Commissioner filed a response on December 18, 2013. Plaintiff filed a reply on December 31, 2014, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 44 years old at the time of the administrative hearing and had a ninth grade education, testified as follows. Her testimony appears at pages 46-62 of the

administrative record.

Plaintiff explained that she could not work due to pain in her lower back which extended to her feet.  She also suffered pain in her neck and shoulder, which was worse on the left side.  She took pain medication, which reduced but did not eliminate the pain.  Plaintiff also said she did not like being around people, and was bothered by both anxiety and depression.  She described panic attacks, crying spells, and anger.  She was receiving both medication and counseling for these issues.

Plaintiff said she had been told not to lift more than four pounds.  It was hard for her to lift a gallon of milk.  She was unable to either sit or stand for more than 20 minutes at a time.  She also lost her balance if she tried to walk too fast.

On a daily basis, Plaintiff cooked occasionally, cared for her pets, and did housework (but only in spurts).  She took medication to help her sleep at night and did not nap during the day.  She visited with friends on the telephone but did not go out much.  She had been able to travel to California and Hawaii to visit family members.  In response to questioning from her attorney, she also testified to lapses in concentration, racing thoughts, and sudden mood swings.

### III.  The Medical Records

The medical records in this case are found beginning on page 238 of the administrative record.  The pertinent records can be summarized as follows.

The first set of records are office notes from Dr. Sayegh, who treated Plaintiff for low back pain.  The first note, dated March 12, 2008, showed that Plaintiff had trigger points bilaterally in the paraspinal muscles and that straight leg raising was "mildly positive" on both sides.  Her neurological examination was normal.  She reported pain from a fall on the stairs and said she had difficulty walking at times.  Dr. Sayegh

diagnosed lumbago, sprain/strain, herniated nucleus pulposus, and degenerative disc disease. He prescribed Percocet and Naprosyn and noted that Plaintiff could not afford steroid injections or other such treatments. Three months later, at the next visit, Plaintiff reported a decrease in symptoms; the same was true when Dr. Sayegh saw her in September of 2008 and January of 2009. In May, 2009, however, her pain level had increased slightly (to 7 out of ten), and it was at the same level in September, 2009. Otherwise, the results of the physical examinations did not change over that time. (Tr. 238-59). Later in the record, there is a note from Dr. Sayegh dated December 5, 2011, which has some additional diagnoses, including mild lumbar facet syndrome, chronic bilateral L4-L5 radiculopathy, cervicalgia, herniated nucleus pulposus with myelopathy, stenosis, anxiety, depression, and sleep disturbance. She described constant burning pain which had been getting worse and was radiating into her left shoulder and arm. She had some pain on examination of her shoulder but straight leg raising was negative and her neurological examination was still intact. She was given Percocet and told to return in two months. (Tr. 409-10).

  The next medical record is a form completed by Dr. Chlovechok dated May 17, 2010. He noted his diagnoses as chronic lumbar back pain, lumbar degenerative disc disease, cervicalgia, bilateral L4 radiculopathy, and lumbar facet arthropathy. He did not think Plaintiff's ability to stand, sit or walk were affected, but she could only lift five pounds frequently and ten occasionally, and she was moderately limited in a number of postural areas. (Tr. 260-61).

  Dr. Bonner filled out a physical capacity evaluation form in May, 2010, indicating that Plaintiff could stand, walk and sit for a total of fewer than eight hours in a work day, could not do any of those activities for more than twenty minutes at a time,

could rarely lift objects weighing about four pounds, and could not use her hands for repetitive pushing and pulling.  He also noted she would need frequent position changes.  (Tr. 266-67).  That evaluation is followed, in the record, by many pages of office notes, including several MRI reports from 2006 showing some disk degeneration at L4-5.  In February, 2006, Dr. Bonner restricted Plaintiff from heavy lifting or straining or climbing up ladders or stairways.  Notes from 2008 show continued reports of back pain and say that Plaintiff was going to a pain management specialist.  A note from October 5, 2008 described pain radiating into Plaintiff's left leg, and on February 2, 2009, Plaintiff reported a fall in January in which she injured her upper back.  That pain then began to radiate into her right shoulder and arm.  By July of that year, Plaintiff said her neck pain was better but her back pain was traveling into both hips and legs.  A note dated June 4, 2010 stated that the medication Plaintiff was receiving for both her back and neck pain and for her anxiety were "effective."  (Tr. 267-343).

    Dr. Thomas, a state agency reviewer, filled out a physical capacities evaluation form on May 26, 2010.  Dr. Thomas thought Plaintiff could perform the physical requirements of medium work but that she could only occasionally stoop and crouch and could never climb ladders, ropes or scaffolds.  Dr. Thomas also limited her to occasional use of foot controls.  (Tr. 344-52).

    Plaintiff underwent a psychological evaluation on August 10, 2010, which was performed by Mr. Spindler, a psychologist. Plaintiff described her physical problems as hypertension and chronic neck and back pain.  She had never been hospitalized or given outpatient treatment for psychological issues.  She had worked as a self-employed house cleaner and more recently as a clerk in a tanning salon.  She had no issues with coworkers or supervisors.  Her mood was mildly depressed and she denied mood

swings or anger management issues.  She described her daily routine as involving taking medication, watching television, and doing household chores.  Her medications helped with her stress and depression levels.  Mr. Spindler rated her GAF at 70 and thought that she had only a mild impairment in the area of dealing with work stress, and no impairment in any other work-related areas.  (Tr. 353-58).

Another psychologist, Dr. Meyer, filled out a residual functional capacity form on August 31, 2010.  She thought that Plaintiff had a moderate to marked inability to interact with the public, respond appropriately to supervisors, and get along with coworkers.  In other areas, she was either moderately limited or not limited at all.  (Tr. 361).  Plaintiff had reported to a caseworker, Ms. Fowler, that she had severe mood swings, manic episodes, panic attacks, and anger issues.  (Tr. 365).  Dr. Steiger, a state agency reviewer, concluded, based on these records, that Plaintiff suffered from an affective disorder and an anxiety disorder but that her only functional limitation was in the area of maintaining concentration, persistence and pace, and that it was only mild.  Dr. Steiger gave great weight to the consultative examiner's opinion.  (Tr. 366-79).

Plaintiff also had an MRI done of her cervical spine in August, 2010.  It showed mild or minimal findings at C5-6 and C6-7.  (Tr. 385).  An MRI of the thoracic spine done on April 20, 2011 was normal.  (Tr. 407).

Finally, the file contains a large number of progress notes of mental health counseling at Six County, Inc., beginning with an intake sheet dated February 3, 2011.  At that time, Plaintiff reported difficulty sleeping and relationship issues.  She had a remote history of mental health treatment, demonstrated anxiety, and denied mood swings.  Her diagnoses included an anxiety disorder and her GAF was rated at 60.  Subsequent notes show

changes in mood and affect from appointment to appointment and most show that she was making "some progress" toward her goals. She also experienced the death of her son during this time, and her GAF afterwards was rated at 55. (Tr. 423-70).

## IV. The Vocational Testimony

A vocational expert, Ms. Thomas, testified at the administrative hearing. Her testimony begins at page 62 of the record.

Ms. Thomas was questioned about a hypothetical person with Plaintiff's background who could perform sedentary work with no climbing of ladders, ropes or scaffolds, with only occasional balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs, and who had to avoid concentrated exposure to extreme cold, hydration, and hazards such as heights and machinery. Further, that person could understand, remember and carry out only simple job instructions and could interact with others on only an occasional basis. Ms. Thomas said that someone with those limitations could work at jobs such as surveillance system monitor, document preparer, and inspector (such as a touch-up screener). About 5,200 of those jobs existed in the regional economy, and about 39,500 of them could be found in the national economy. Someone who had to change positions every 20 minutes and lift only four pounds could still do the surveillance system monitor job but not the other two.

There were some additional limitations which, according to Ms. Thomas, would be inconsistent with such a person's ability to work, however. They included being off task for up to two hours a day; being off task for six to nine minutes every hour; missing one or two days of work per month; being off task for 25% to 33% of the day; and being able to sit, stand or walk for a combined total of only six hours in a work day, along with other physical restrictions.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 23 through 36 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity from her application date of April 1, 2010 forward. As far as Plaintiff's impairments are concerned, the ALJ found that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, lumbar radiculopathy, cervicalgia, depressive disorder and anxiety disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work although she could never climb ladders, ropes or scaffolds and could only occasionally balance, kneel, stoop, crouch, crawl and climb ramps and stairs. She could not tolerate exposure to extreme cold, vibrations, or hazards like heights and moving machinery. From a psychological standpoint, she was limited to understanding, remembering and carrying out only simple instructions, and her interactions with the public could be only occasional. The ALJ found that, with these restrictions, Plaintiff (who had no past relevant work) could perform jobs such as surveillance system monitor, document preparer, and inspector, and that such jobs existed in significant numbers in the regional and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.   Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these

-7-

claims: (1) that the ALJ's mental residual functional capacity finding is not supported by substantial evidence; (2) that the ALJ failed to provide good reasons for discounting the opinion of Dr. Bonner, a treating source; and (3) the ALJ's physical residual functional capacity finding did not account for all of Plaintiff's exertional and non-exertional limitations.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

    Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A.  <u>Mental Residual Functional Capacity</u>

In her first statement of error, Plaintiff contends that some of her functional limitations were omitted from the ALJ's residual functional capacity finding.  In particular, she criticizes the ALJ for failing to explain how he resolved conflicts in the opinion evidence, for making an unsupported credibility finding, and for both finding that she had limitations in the area of concentration, persistence and pace and then failing to specify what those limitations were or to include them in the hypothetical question posed to the vocational expert.

Taking these contentions in order, the first issue is whether the ALJ dealt appropriately with conflicts in the evidence concerning the extent of Plaintiff's mental functional limitations.  As described above in the summary of the medical records, there was somewhat of a divergence of opinion among the various psychologists and other mental health sources who either treated Plaintiff, examined her for consultative purposes, or reviewed her records.  Plaintiff faults the ALJ for giving essentially no weight to the opinion of Dr. Meyer, the treatment notes from Dr. Bonner, and the history of treatment at Six County, Inc., and instead crediting the opinions of Mr. Spindler and Dr. Steiger, which she characterizes as "outlying."  Statement of Errors, Doc. 17, at 10.  She notes that Dr. Meyer's opinion appears to be most consistent with the other evidence and also with the ALJ's finding of "severe" psychological impairments - neither Mr. Spindler nor Dr. Steiger viewed Plaintiff's anxiety or depression as severe - but the ALJ nonetheless rejected it for the "illogical" reason that it was based on Plaintiff's subjective (and not entirely credible) complaints.  Plaintiff argues that all of the reasons given by the ALJ for discounting the credibility of her reports of significant psychological limitations - that her anxiety was controlled by medication, that

-9-

she had been able to work without experiencing conflicts with supervisors or coworkers, and that she did not seek mental health treatment until after she applied for benefits - are unsupported by the record.

    Before describing the Commissioner's response, it is helpful to set out in some detail the ALJ's reasoning process on the issue of mental residual functional capacity. The ALJ first summarized the various examination and treatment records (Tr. 31-32) and then made a credibility finding, concluding that Plaintiff's description of her psychological limitations was not "completely" credible because her medication controlled the symptoms of her anxiety disorder, that she did not begin mental health treatment until after she applied for benefits (and did not list any psychological impairments in the disability report accompanying her application), and that medications have also been effective in controlling other symptoms. (Tr. 32). The ALJ then turned to the opinion evidence and noted, first, that although he gave great weight to the opinions of Mr. Spindler and Dr. Steiger, he found Plaintiff to be "somewhat more limited" based on her subjective complaints. He then reviewed Dr. Meyer's evaluation and rejected it as "extreme, based on a onetime evaluation, inconsistent with her findings on mental status examination and inconsistent with the GAF rating." He also pointed out that it relied heavily upon, and assumed the truth of, Plaintiff's subjective complaints. (Tr. 34).

    The Commissioner's response to all of Plaintiff's arguments can be accurately described as defending the ALJ's decision on the grounds that it was reasonable. The Commissioner contends that the ALJ made a reasonable credibility finding and acted reasonably in discounting Dr. Meyer's opinion for exactly the reasons given in the administrative decision. In particular, the Commissioner, citing to other decisions from this Court, asserts that an ALJ need not accept the opinion of a one-time examining

source if it appears the examiner uncritically accepted all of the complaints made by the claimant.

There is no treating source opinion in this record concerning the extent to which Plaintiff's ability to work is compromised by symptoms from her anxiety and depression.  When that is the case, the issue is not so much how well the ALJ explained his or her decision (although that is always a factor to some degree) but whether, taking the record as a whole, the decision is one which a reasonable person could have reached.  To decide that question, the Court is required to look at the various pieces of evidence which are relevant to the issue - in this case, Plaintiff's residual mental functional capacity - and to determine whether the evidence supporting the ALJ's decision is substantial enough to outweigh the contrary evidence.  See, e.g., Swett v. Commissioner of Social Sec., 886 F.Supp.2d 656, 660-61 (S.D. Ohio 2012)(explaining that "[w]here there are conflicting opinions from various medical sources, it is the ALJ's function to evaluate the medical evidence and determine Plaintiffs' RFC" and that "[a] medical expert's opinion, based on a review of the complete case record, can constitute substantial evidence").

Here, there were two medical opinions which suggested that Plaintiff did not have even a severe psychological impairment.  Mr. Spindler conducted essentially the same type of evaluation as did Dr. Meyer, and the Commissioner could simply have chosen to credit his view of the severity of Plaintiff's impairments without running afoul of the substantial evidence standard.  Further, Plaintiff did not describe to Dr. Meyer any problems in her prior work in terms of getting along with people - she said she was fired because of her back problems - and she said she had friends with whom she socialized, including going out to shoot pool.  She told Dr. Meyer she had mood swings but told Mr. Spindler she did not.  She did not appear to tell Dr. Meyer that

her anxiety was generally under good control with medications. She described intense anger, with difficulty controlling her temper, when she spoke with Dr. Meyer, but she told Mr. Spindler she did not have any significant difficulties in that area. These are all reasons why the ALJ could have found Dr. Meyer's opinion to be less credible, yet the ALJ still gave it some weight.  And despite the fact that Plaintiff may have had reasons for delaying actual mental heath treatment (as opposed to obtaining anti-anxiety medication from Dr. Bonner) until after she filed her disability application, the fact remains that she did not seek such counseling until then.  Finally, although the Six County treatment notes do suggest some moderate symptoms, no one from that agency expressed any specific opinion about functional limitations.  Overall, there is substantial evidence supporting the ALJ's decision to give significant weight to the opinions of Mr. Spindler and Dr. Seigel, to find some of Dr. Meyer's opinions to be credible, to give some weight to Plaintiff's own testimony about psychological limitations, and to come up with an RFC that represented a blending of the evidence on these issues.

    The other argument subsumed within Plaintiff's first statement of error is that the ALJ's decision inconsistently determined that Plaintiff had functional limitations in the area of concentration, persistence and pace, but those limitations were not reflected in the residual functional capacity finding. To the contrary, the Commissioner says, the ALJ accommodated these limitations by restricting Plaintiff to the performance of tasks involving simple instructions and which did not require much interpersonal interaction.  If that were not sufficient, however, the Commissioner claims that any error was harmless because the ALJ could have found that Plaintiff's deficiencies in this area were mild and did not produce any functional restrictions.

The Court finds the Commissioner's arguments to be mistaken on both counts. First, it is well-established that an ALJ does not properly account for problems with concentration, persistence and pace just by limiting a claimant to the performance of simple tasks involving little interaction with others. See, e.g., Ealy v. Comm'r of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010); Edwards v. Barhart, 383 F.Supp.2d 920 (E.D. Mich. 2005); see also Ball v. Comm'r of Social Security, 2011 WL 765978, *3-4 (S.D. Ohio Feb. 25, 2011). Although some courts have gone further and concluded that even limiting such a claimant to jobs without strict production quotas or which do not involve a fast-paced work environment may still not correlate directly with limitations in concentration, persistence and pace, it is not necessary to wade into that thicket; it is enough to say, here, that the ALJ made no accommodation for such limitations in the mental RFC.

Further, the harmless error argument advanced by the Commissioner is fundamentally flawed. The ALJ did not rely on the opinions of those sources who found no restriction in this area of mental functioning; rather, the ALJ found as a fact that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (Tr. 26). The ALJ also acknowledged that the limitations described in that section of the administrative decision, based on the "B" criteria, were not the equivalent of an RFC finding, but that these limitations needed "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B ...." (Tr. 27). Nowhere in the following section of the decision is that detailed assessment made, however, particularly as it relates to the moderate deficiencies the ALJ found in the area of concentration, persistence and pace. Under these circumstances, the Court cannot engage in a hypothetical restructuring of the ALJ's decision, but must order a remand so that the ALJ can

resolve and explain this inconsistency and, if needed, obtain additional vocational evidence on the significance of such limitations to the Plaintiff's ability to do the jobs previously identified.

### B. The Treating Source Opinion

In her second statement of error, Plaintiff argues that the ALJ did not set forth good reasons for rejecting the opinion of her long-time treating physician, Dr. Bonner. Any analysis of that issue begins with the ALJ's exact articulation of the basis for the rejection of a treating source opinion.

The ALJ devoted a paragraph to Dr. Bonner's opinion. It reads in full as follows:

> On May 20, 2010, Dr. Bonner completed a Physical Capacity Evaluation and opined that the claimant could stand 1-2 hours, walk 1 hour and sit 3 hours total in an 8-hour workday. He felt the claimant could rarely (once in a while, not in work setting, such as ½ gallon milk, shoes, small pain (sic)) lift up to 10 pounds. Dr. Bonner further opined that the claimant could use her hands for repetitive simple grasping and fine manipulation, but not pushing or pulling. He felt that the claimant could use her right foot for repetitive movements as in operating foot controls, but not her left. He opined that the claimant could rarely bend, squat, crawl, climb steps and climb ladders, and noted that he anticipated a need for frequent position changes (Exhibit B-3F). The undersigned gives no weight to this opinion as it is not supported by the record as a whole, to include hearing testimony, as the claimant testified that she does not lie down during the day.

(Tr. 33). The only other reference to Dr. Bonner's opinion can be found in the ALJ's discussion of Dr. Das' review of Dr. Thomas' opinion, which, according to the ALJ, "noted that Dr. Bonner's opinion ... that the claimant could only lift/carry 5-10 pounds was not given weight as it was not supported by the evidence that the claimant has normal gait/station, intact range of motion and minimally positive straight leg raising (Exhibit B-

-14-

8F)." The ALJ said he gave Dr. Das' and Dr. Thomas' opinions "significant weight" although he found that Plaintiff was "somewhat more exertionally limited than otherwise thought." Id.

In Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004), the Court of Appeals held that an ALJ is required to provide a satisfactory explanation for the decision to afford less than controlling weight to the opinion of a treating source in order to satisfy the regulatory purpose, reflected by the mandatory language found in 20 C.F.R. §404.1527 and §416.927, of both advising a claimant why the claimant's doctor's opinion is not being accepted, and allowing a court to conduct a meaningful review of the ALJ's decision on that issue. As explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 243 (6th Cir. 2007), "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." The Court of Appeals expanded on this precept in Blakely v. Comm'r of Social Security, 581 F.3d 399, 406 (6th Cir.2009), making it clear that when an ALJ does not give controlling weight to an opinion from a treating source, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."

The Commissioner does not argue that the ALJ's decision specifically referred to factors such as the length of the treating relationship, the frequency of examination, or the

specialization of the treating physician; clearly, it did not. The Commissioner contends, however, that the ALJ correctly focused on the supportability of the opinion and its inconsistency with other evidence of record, and cites to the opinions of the state agency reviewers who thought that Plaintiff could do medium work.

The ALJ did credit the state agency reviewers' opinions, but only in part, and did not discuss many of the inconsistencies between them and Dr. Bonner's opinion. Even the ALJ's citation to Dr. Das' reference to Dr. Bonner appears to be a description of why Dr. Das did not give significant weight to selected portions of Dr. Bonner's opinion - namely, his lifting restrictions - and not an analysis of why Dr. Das' view on that issue was more persuasive. That observation, to the extent that it could be construed as a finding by the ALJ, did not address the other restrictions imposed by Dr. Bonner, such as the limitation to maintaining a work posture for less than eight hours in a workday or the restrictions on the use of hands and feet.

The Commissioner also claims that the ALJ properly focused on inconsistencies between Dr. Bonner's opinion and the record, which is a permissible factor in this analysis. The ALJ did not refer to any inconsistency between Dr. Bonner's examination findings or the results of tests he ordered and Dr. Bonner's opinions, however; the only inconsistency he mentioned was the supposed discrepancy between Dr. Bonner's views about sitting, standing and walking and Plaintiff's testimony that she "does not lie down during the day." Again, that has no relevance to any limitation imposed by Dr. Bonner other than the total time Plaintiff could maintain a work posture, and even there, the relevance is minimal. To put the statement in context, it came immediately after a question about how well Plaintiff slept at night, and right after her testimony that she could only do

housework "in spurts" and then had to stop and take a break. (Tr. 52). Plaintiff also testified that she could not sit more than 20 minutes nor stand more than 20 minutes - testimony entirely consistent with Dr. Bonner's opinion and a limitation not found by the ALJ. She did not testify one way or the other about restrictions in using either her hands or feet. A fair reading of the entire record, and not just a selective focus on an isolated statement made by Plaintiff at the hearing, does not support the wholesale rejection of the treating source's opinion on the ground that it is inconsistent with that one isolated statement. See, e.g., Mukes v. Comm'r of Social Security, 946 F.Supp.2d 737, 747 (S.D. Ohio 2013)(an ALJ errs by "selectively reading the record and making conclusions that constituted a 'cherry picking' of evidence, designed to produce the result of a negative finding"). Consequently, a remand is also required to permit the ALJ properly to evaluate Dr. Bonner's opinions - all of them - in the context of the entire record, and to provide an explanation of the weight assigned to his opinions which is consistent with Wilson, Rogers, and Blakely.

### C. The Physical RFC

Plaintiff's final statement of error raises an issue about the ALJ's physical residual functional capacity finding. The gist of her argument is that the ALJ limited her to performing sedentary work, but did not explain whether that was based on lifting or standing and walking limitations, nor did he make any separate findings on these issues. Plaintiff asserts that the decision does not comply with Social Security Ruling (SSR) 96-8p, which says that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light,

medium, heavy, and very heavy."

Although the Commissioner argues to the contrary, the ALJ did not literally comply with this regulation, because his decision simply referred to a capacity to do sedentary work "as defined in 20 C.F.R. 416.967(a)" and he did not make a prior determination of Plaintiff's abilities "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" - the functions described in 20 C.F.R. §416.945(b), which is one of the regulatory provisions to which SSR 96-8p refers.  Most of the Commissioner's argument, although not phrased exactly this way, appears to go to the issue of whether the error was harmless; that is, whether it is true, as the Commissioner contends, that both the vocational expert and Plaintiff understood exactly what the ALJ's finding meant and how it translated into her ability to perform substantial gainful employment.  See Memorandum in Opposition, Doc. 20, at 9. Because the Court is remanding the case for other reasons, it is unnecessary to determine if this error was harmless or not; the ALJ will have ample opportunity to make the findings required by SSR 96-8p as part of the decision on remand.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or

recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp          </u>
United States Magistrate Judge
